*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1510**

In re the Marriage of:
Beth Carolyn Potter, petitioner,
Respondent,

vs.

Joseph Leroy Potter,
Appellant.

**Filed May 31, 2016
Affirmed in part, reversed in part, and remanded
Peterson, Judge**

Polk County District Court
File No. 60-FA-14-252

Kristen P. Venhuizen, Kalash & Pettit, Grand Forks, North Dakota (for respondent)

Kerry S. Rosenquist, Brittany M. Johs, Rosenquist & Arnason, PLLP, Grand Forks, North Dakota (for appellant)

Considered and decided by Connolly, Presiding Judge; Peterson, Judge; and Randall, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**UNPUBLISHED OPINION**

**PETERSON**, Judge

In this marital-dissolution action, appellant challenges provisions in the judgment and decree regarding legal custody, child support, maintenance, and the division of marital property and debt. We affirm in part, reverse in part, and remand.

## DECISION

Because neither party made a motion for a new trial, our review is limited to determining whether the evidence sustains the findings of fact and the findings sustain the district court's conclusions of law. *Rubey v. Vannett*, 714 N.W.2d 417, 425 (Minn. 2006). But a motion for a new trial is not a prerequisite for appellate review of a substantive question of law that was previously considered and addressed by the district court. *Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.*, 664 N.W.2d 303, 311 (Minn. 2003). We view the record in the light most favorable to the district court's findings, defer to the district court's credibility determinations, and will reverse a finding only if we are left with a definite and firm conviction that a mistake has been made. *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000).

## I.

At the time of the dissolution trial, appellant-father Joseph Leroy Potter and respondent-mother Beth Carolyn Potter had two minor children, J.P. and A.P. The parties did not agree about physical custody of the children, and the district court appointed a custody investigator, who recommended that the parties share legal custody of the children and that mother have sole physical custody subject to father's parenting time. The custody

investigator was particularly concerned about the hostility between the parties, the lack of communication, the failure to provide each other notice of the children's activities, and the parties' desire "to push the envelope to see what they can get by with."

The parties agreed that they should have joint legal custody. The district court found that it was in the children's best interests for the parties to share legal custody, and it ordered that the parties should have joint legal custody. But, because parental disagreements about approving A.P.'s individual education plan (IEP) had previously delayed implementation of a new plan, which the district court determined was not in A.P.'s best interests, the court ordered further that, "if the parties disagree about [A.P.'s] IEP in the future, [mother] shall have sole legal authority to approve [A.P.'s] IEP."

Father argues that the district court abused its discretion by awarding the parties joint legal custody but granting mother sole legal authority to approve A.P.'s IEP if the parties are not able to agree about the plan. Father contends that the proper procedure for resolving an impasse is to bring a motion and let the district court decide.

In a marital dissolution, the district court "shall make such further order as it deems just and proper concerning . . . the legal custody of the minor children of the parties which shall be sole or joint." Minn. Stat. § 518.17, subd. 3 (a)(1) (2014). Joint legal custody is rebuttably presumed to be in a child's best interests. *Id.* subd. 2(b) (2014).[1] But it "should

---

[1] This statute was amended by 2015 Minn. Laws, ch. 30, art. 1, §§ 4, 13, at 273, 283 (effective August 1, 2015, or shortly after the decree here was issued). The presumption is now found at Minn. Stat. § 518.17, subd. 1(b)(9) (Supp. 2015).

be granted only where the parents can cooperatively deal with parenting decisions." *Rosenfeld v. Rosenfeld*, 529 N.W.2d 724, 726 (Minn. App. 1995) (quotation omitted).

In our review of the district court's custody order, we are "limited to determining whether the district court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Zander v. Zander*, 720 N.W.2d 360, 365-66 (Minn. App. 2006), *review denied* (Minn. Nov. 14, 2006). Custody determinations must be based on a child's best interests, and "current law leaves scant if any room for an appellate court to question the [district] court's balancing of best-interests considerations." *Vangsness*, 607 N.W.2d at 476-77.

The district court's finding that the parties' disagreement previously delayed implementation of A.P.'s IEP is supported by the evidence, and the district court did not improperly apply the law when it ordered that mother shall have sole legal authority to approve A.P.'s IEP if the parties failed to agree. It is within the district court's authority to make "such further order as it deems just and proper concerning" legal custody. Minn. Stat. § 518.17, subd. 3. The district court's order provides a method for resolving future disagreements about A.P.'s IEP without the delay required to bring a motion in district court. This prompt method for resolving disputes was not an abuse of the district court's discretion, and we affirm the custody order.

**II.**

Father was ordered to pay $1,628 per month for child support. "We will reverse a district court's order regarding child support only if we are convinced that the district court

4

abused its broad discretion by reaching a clearly erroneous conclusion that is against logic and the facts on record." *Putz v. Putz*, 645 N.W.2d 343, 347 (Minn. 2002).

The district court calculated the shares of "parental income for determining child support" (PICS) as 82% for father and 18% for mother. The district court assigned responsibility for uninsured and unreimbursed medical and dental expenses to each party according to these percentages. The parties agreed to divide the costs of extracurricular and sports activities according to the PICS percentages.

Father argues that the district court improperly calculated child support by failing to attribute spousal maintenance as income to mother. "The district court's determination of net income [for purposes of calculating child support] must be based in fact and it will not be overturned unless it is clearly erroneous." *Schisel v. Schisel*, 762 N.W.2d 265, 272 (Minn. App. 2009). Mother concedes that "the district court erred in calculating [father's] child support obligation."

Minn. Stat. § 518A.29(a) (2014) defines "gross income" as "any form of periodic payment to an individual, including . . . spousal maintenance received under . . . the current proceeding." "[S]pousal maintenance payments . . . ordered payable to the other party as part of the current proceeding are deducted from other periodic payments received by a party for purposes of determining gross income." *Id.* (g) (2014). Thus, the district court erred by failing to include in mother's income and deduct from father's income the $418 per month that mother receives and father pays as spousal maintenance.

This error affects the PICS percentages used to determine child support, medical support and expense reimbursement, and reimbursement for extracurricular and sports

expenses, which the parties agreed to divide according to the PICS percentages. The district court also erred when it found that exhibit 40 shows that father's *monthly* cost for dependent health coverage is $39.28. Exhibit 40 shows that father's *biweekly* cost for dependent health coverage is $39.28. We therefore reverse the child-support award and remand to the district court to recalculate the amount of the award.

### III.

Father argues that the district court abused its discretion and improperly applied the law when determining his ability to pay spousal maintenance. An appellate court reviews a district court's maintenance award under an abuse-of-discretion standard. *Dobrin v. Dobrin*, 569 N.W.2d 199, 202 (Minn. 1997). A district court abuses its discretion regarding maintenance if its findings of fact are unsupported by the record or if it improperly applies the law. *Id.* at 202 & n.3 (citing *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988)).

Father contends that the district court erred when it found that "no paystubs of [father's] were submitted into evidence." When determining father's net income, the district court reduced father's gross income by 30% because it found that no paystubs had been submitted. But exhibit 109, which was admitted at the beginning of father's direct testimony, contains paystubs for the first eight paychecks that father received in 2015.

Father argues that the district court incorrectly calculated mother's expenses by including payments that mother was not making and payments that mother made on behalf of the parties' adult children. Father contends that mother's expenses should not include $400 for rent, $35 for a washer/dryer, and $100 for private school tuition because mother does not pay these amounts. Citing exhibit 18, the district court found that mother has

6

monthly expenses of $3,836 and specifically stated that this amount "reflects a reduction of $400.00 in rent and the elimination of the $35.00 washer/dryer payment." The total amount shown on exhibit 18 for expenses is $4,271. Reducing this amount by $435 results in expenses of $3,836, as the district court found. Thus, mother's expenses do not include $400 for rent and $35 for a washer/dryer.

The expenses listed in exhibit 18 also include $100 for private school tuition. A.P. is enrolled at the private school where mother is employed. Mother receives a 50% reduction of tuition because she is employed by the school. The district court ordered father to pay the remaining 50%. Father argues that the tuition for A.P. should be divided equally between the parties or consistent with the PICS determination.

The district court's tuition decision was not an abuse of discretion. Although a cash payment and a reduced price are not the same, they have the same effect with respect to paying A.P.'s tuition. Mother pays one-half of the tuition by continuing her current employment, and father pays one-half by making a cash payment. But the district court's finding that mother's expenses include $100 for tuition is not supported by the record because mother does not incur an expense for tuition; she receives a tuition discount from her employer.

Father argues that it was improper to include in mother's expenses specific amounts paid on behalf of the parties' adult children. Both parties testified that their expenses included items paid on behalf of their adult children. Father testified that he paid for one adult child's "car insurance and stuff" and mother testified that two adult children are on her cell-phone plan, but neither party specified the amount paid for these items. Also,

7

exhibit 18 includes $150 for college assistance, and when asked what that is, mother testified, "With the older kids going to college, it's just helping them on a monthly basis with living expenses and gas for coming home and other." The district court did not subtract an amount paid on behalf of adult children from either party's expenses. This court has held that "[t]he [district] court must fairly determine maintenance without considering the needs of the adult children in setting the amount of maintenance." *Musielewicz v. Musielewicz*, 400 N.W.2d 100, 103 (Minn. App. 1987), *review denied* (Minn. Mar. 25, 1987). The district court erred by including $150 for college assistance in mother's expenses.

Because some of the district court's findings with respect to the parties' expenses are not supported by the record and because the district court's recalculation of child support will affect the amount of any spousal-maintenance award, we reverse the spousal-maintenance award and remand to the district court to recalculate the amount of the award.

**IV.**

We review the district court's division of marital property and debt for an abuse of discretion. *Antone v. Antone*, 645 N.W.2d 96, 100 (Minn. 2002). "We will affirm the [district] court's division of property if it had an acceptable basis in fact and principle even though we might have taken a different approach." *Id.* Although property should be divided in an equitable manner, it need not be an equal division. *Crosby v. Crosby*, 587 N.W.2d 292, 297 (Minn. App. 1998), *review denied* (Minn. Feb. 18, 1999).

The district court apportions debt under the same principles that it divides property. *Justis v. Justis*, 384 N.W.2d 885, 889 (Minn. App. 1986), *review denied* (Minn. May 29,

8

1986).  "Nonmarital property" includes property that was acquired before the marriage or after the valuation date.  Minn. Stat. § 518.003, subd. 3b(b), (d) (2014).  If debt is treated in the same manner as property, a debt acquired before the marriage or after the valuation date is nonmarital in nature.  *See Berenberg v. Berenberg*, 474 N.W.2d 843, 848-49 (Minn. App. 1991) (affirming district court's apportionment of debt incurred after separation to party who incurred debt), *review denied* (Minn. Nov. 13, 1991).

The district court ordered the parties to sell the marital home and provided a detailed list of expenses that must be paid out of the proceeds before dividing any remaining amount between the parties.  Father argues that the district court abused its discretion by refusing to give him credit for the payments he made to reduce the mortgage balance after mother left the home.

The district court found that mother obtained an appraisal for the home in September 2014 because she believed that father wanted to keep the home.  However, father later listed the home for sale, and mother agreed to go along with the sale.  The parties entered into a purchase agreement dated January 19, 2015, but father unilaterally backed out of the sale because he was concerned that he would not qualify for a mortgage while the divorce was pending.  The district court expressly declined to give father credit "for mortgage payments made after the separation, as [father] had the benefit of living in the home."

The district court's decision has an acceptable basis in fact and principle.  Father remained in the home after the parties separated, and he could have avoided at least some of the mortgage payments by cooperating in the sale of the property.

Father argues that the district court abused its discretion by ordering him to be solely responsible for a loan taken against his 401(k) account, with an outstanding balance of $14,775.92. Father took out the loan on April 27, 1998, before the parties were married, in order to purchase a house in contemplation of the parties' marriage; the house and the loan were solely in father's name. Father argues that, although this loan "was technically a premarital debt, it was taken out in contemplation of the parties' marriage" and "[b]oth parties benefited from the loan as it was used as a down payment for a home." Therefore, father contends, "this debt should be equitably divided between the parties." But the fact that both parties benefited from the loan is not sufficient, by itself, to show that the district court abused its discretion by not dividing the debt between the parties. The district court divided the parties' property and debts in the context of their overall financial situation, and, although it could have treated this debt differently, assigning the debt to father was not an abuse of its discretion.

Finally, father asserts that the district court abused its discretion by ordering him to pay the remaining balance of a medical bill that mother incurred during the marriage. The district court ordered father to pay this bill because it could have been paid through his flexible spending account, which is supposed to be used for medical expenses. This is an acceptable basis for the district court's order in fact and principle. *See Antone*, 645 N.W.2d

at 100 (stating that property division must be affirmed "if it had an acceptable basis in fact and principle). We, therefore, affirm the district court's division of marital property and debt.

On remand, the district court may, in its discretion, open the record.

**Affirmed in part, reversed in part, and remanded.**