# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01077-COA

**WILLIAM DOTIE JACKSON** APPELLANT

**v.**

**LORI DUPERIER JACKSON** APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/26/2017 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | MARTY CRAIG ROBERTSON ROBERT MARVIN PEEBLES MATTHEW STANLEY EASTERLING CAYLAN DEVINE DUNNELLS |
| ATTORNEYS FOR APPELLEE: | AMANDA JANE PROCTOR WILLIAM R. WRIGHT |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED - 03/19/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GREENLEE, J., FOR THE COURT:**

¶1.    This appeal concerns Dotie and Lori Beth Jackson's custody battle over their two minor children, ADJ and WGJ.[1]  Following Dotie and Lori Beth's divorce, Lori Beth was awarded primary physical custody of the children subject to a visitation schedule.  Dotie sought modification of this custody award after Lori Beth accused Dotie of abusing WGJ.[2]

---

[1] We use the children's initials to protect public disclosure of their identity.

[2] The youth court dismissed all charges against Dotie.

The chancellor heard evidence concerning Lori Beth's abuse allegations, the Department of Human Services' subsequent investigation, and the well-being of the two children. Based on this evidence and judging the credibility of the witnesses before her, the chancellor found that there had been no material change in circumstances that would adversely impact the children and warrant further consideration of the three-prong test for custody modification. We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. When Dotie and Lori Beth divorced in July 2012, they agreed Lori Beth would have primary physical custody of their son and daughter, WGJ and ADJ, both born in November 2011. They also agreed that Dotie would have scheduled visitation. On August 25, 2015, Dotie petitioned the Hinds County Chancery Court to find Lori Beth in contempt and to grant him increased access to parenting time with the children. Shortly thereafter, in early September, Lori Beth purchased an educational children's book called "God Made All of Me," which discusses appropriate and inappropriate physical touching. Lori Beth read the book to WGJ repeatedly. Approximately six weeks after the book was purchased, WGJ made several statements to Lori Beth concerning possible inappropriate touching by Dotie. Lori Beth's nanny, Regina Jordan, overhead one of WGJ's statements to Lori Beth. On another occasion, WGJ told his maternal grandmother, Joni Duperier, that his "daddy touches [his] pee pee."

¶3. On November 12, 2015, Lori Beth filed a motion for emergency relief alleging that Dotie had abused WGJ and asking that Dotie's visitation rights be temporarily suspended.

2

Lori Beth also sought appointment of a guardian ad litem (GAL) to represent the children's interests. That same day, a report of suspected abuse was made to the Department of Human Services (DHS). One day later, on November 13, 2015, WGJ was subsequently interviewed at a children's advocacy center, and charges against Dotie were filed in the Hinds County Youth Court. Five days later, the youth court charges against Dotie were dropped after DHS's investigation found no abuse on Dotie's part.

¶4. On January 4, 2016, Dotie filed an amended petition requesting to modify the children's custody so that he have sole legal and physical custody. Lori Beth filed a counterclaim to modify Dotie's visitation schedule on May 18, 2016.

¶5. Between October 3 and 6, 2016, the chancellor heard Dotie's motion for custody modification and Lori Beth's counterclaim to modify visitation. Following trial, the chancellor determined there was no material change in circumstances in the custodial home that would warrant a change in custody. On April 26, 2017, the chancellor entered an order and opinion consistent with her bench ruling. Both Dotie and Lori Beth filed motions to alter, amend and/or clarify the chancellor's April 26 order. On July 27, 2017, the chancellor entered an order resolving the post-trial motions. Dotie has timely appealed.

## STANDARD OF REVIEW

¶6. "Our review of a chancellor's child-custody decision is narrow." *James v. James*, 135 So. 3d 188, 191 (¶10) (Miss. Ct. App. 2013). "We will not disturb a chancellor's factual findings unless the chancellor's decision was manifestly wrong or clearly erroneous, or the chancellor applied an improper legal standard." *Id.* (quoting *Wilson v. Wilson*, 79 So. 3d 551,

3

560 (¶ 37) (Miss. Ct. App. 2012)). "Nor will we substitute our judgment for the chancellor's, 'even if we disagree with the findings of fact and would arrive at a different conclusion.'" *Id.* (quoting *Wilson,* 79 So. 3d at 560 (¶37)). We do, however, review the chancellor's application and interpretation of the law de novo. *Id.*

## DISCUSSION

### I. Modification of Custody

¶7. Dotie argues that the chancellor should have found that Lori Beth's abuse allegations created a material change in circumstances that warranted custody modification. Dotie further argues that Lori Beth's frequent reading of "God Made All of Me" made WGJ believe he was abused and caused injury to his mental and emotional health.

¶8. In a custody modification proceeding, the non-custodial party must prove three distinct prerequisites: "(1) that a substantial change in circumstances has transpired since issuance of the custody decree; (2) that this change adversely affects the child's welfare; and (3) that the child's best interests mandate a change of custody." *Pruitt v. Pruitt*, 142 So. 3d 1111, 1114-15 (¶14) (Miss. Ct. App. 2014).

¶9. The chancellor applied the proper legal framework for resolving Dotie's request to modify custody and found that the first prerequisite—a material change in circumstances— had not been met. In her bench ruling, the chancellor acknowledged that once Lori Beth contacted DHS, youth court, doctors, and child advocacy centers became involved. But the chancellor noted that the case was handled and resolved quickly.

¶10. The chancellor also determined that there was no proof of an adverse effect on the

4

children. The chancellor agreed with the GAL's findings that the children were happy, healthy, and doing well. Although ADJ stuttered, the chancellor found her stuttering was not a new development. Likewise, WGJ's bed-wetting was not in connection with the abuse allegations. Joni testified that the children were very joyful, normal, and loving. And Dotie admitted that the children are well-liked and thriving at school. The GAL testified that she did not observe any adverse impact on the children, and concurred that they are doing well in school.

¶11. On appeal, Dotie insists the chancellor reversibly erred by not considering whether Lori Beth's false allegations of abuse warranted a change in custody. Dotie cites several cases in support, including *Jernigan v. Jernigan*, 830 So. 2d 651, 652 (Miss. Ct. App. 2002), which the chancellor reviewed and found unpersuasive.

¶12. In *Jernigan*, we found no fault with the chancellor's finding an adverse material change in circumstances based on the cumulative effect of the mother's actions, which included alleging in at least three jurisdictions that the father sexually abused the child, without presenting any testimony or medical evidence to substantiate the accusations. *Jernigan*, 830 So. 2d at 653 (¶¶5-6). But in that case, the false allegations were of a constant and continuous nature that showed the mother was willing to sacrifice her child's mental and emotional health in order to get custody. *Id.*

¶13. Here, the chancellor did not find that the allegations of sexual abuse created a custodial environment detrimental to the children's well-being. Instead, the chancellor found that the children were happy, healthy, and loved both parents. We find no abuse of discretion

5

in the chancellor's finding that the children were not adversely affected.

¶14. Because Dotie failed to show a material change in circumstances that adversely affected the children, the chancellor found it was not in the children's best interest to modify custody. After Dotie failed to show the first two prerequisites, the chancellor was within her discretion to deny the modification request without further analysis. *See Anderson v. Anderson*, 961 So. 2d 55, 58 (¶6) (Miss. Ct. App. 2007) (requiring the chancellor, if she finds all three prerequisites have been met, "to make on-the-record findings for each of the *Albright* factors").

## II. Specific Findings

¶15. Dotie argues this matter should be reversed and remanded for the chancellor to make specific findings that there was no material change in circumstances which adversely affected the children. He also argues specific findings under an *Albright*[3] analysis are required.

¶16. Under both the Mississippi Rules of Civil Procedure and the Uniform Chancery Court Rules, the chancellor is not obligated to provide specific findings of fact unless a party requests that she do so. *See Smith v. Smith*, 97 So. 3d 43, 46, 48 (¶¶7,16) (Miss. 2012) (citing *Johnson v. Gray*, 859 So. 2d 1006, 1012 (¶31) (Miss. 2003)). Dotie did not make such a request. And we have specifically acknowledged that this rule applies in child-custody cases. *Blevins v. Bardwell*, 784 So. 2d 166, 174-75 (¶¶30-31) (Miss. 2001).

¶17. But here, the chancellor did make findings of fact that are clearly set forth in her bench ruling. The chancellor definitively concluded:

---

[3] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

> [T]he Court finds and agrees with the guardian ad litem . . . with regard to the children . . . . [J]ust as [the] guardian ad litem, I have conducted an analysis based upon information made available to me. And it is my opinion that there has been no substantial material change in the home of Lori Beth Duperier that would warrant further consideration of the three-prong test for custody modification.

A careful reading of the chancellor's bench ruling reveals the facts on which she based her ruling.

> [T]he parties are really blessed. They have two beautiful young children, and they are healthy, and they are doing well. Both parents are healthy, financially stable . . . and they live a good life.
>
> . . . .
>
> [T]he mother contacted the professionals, and they did what they are required to do. They are to report situations where . . . they're concerned that there is some type of abuse.

The chancellor noted that the investigation concerning the abuse allegations "was handled quickly." She further stated:

> I believe and I found credible the mother's testimony that once the allegations were dismissed that she saw no need for the counseling. The guardian ad litem testified the children were doing well. They [are] happy. They are healthy. They love both parents. Probably as the children see it, they did not skip a beat on their relationships with both parents. From my description, they are involved. They love both parents.

Thus, the chancellor found the allegations against Dotie did not alter the children's relationships with either Dotie or Lori Beth. As earlier discussed, we found no error in the chancellor's finding there was no material change in circumstances that adversely affected the children. And in absence of such a finding, the chancellor was not required to make specific findings under the *Albright* factors. *Anderson*, 961 So. 2d at 58 (¶6). Reversal and

7

remand is not warranted in this instance.

## CONCLUSION

¶18.    The chancellor denied Dotie's custody modification petition after finding there was no material change in circumstances that adversely affected the minor children. The chancellor applied the correct legal framework in this case, and her findings were specific. We find no manifest error in the chancellor's judgment and therefore affirm.

¶19.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**